1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARTURO VELIZ CORTEZ,<br><br>                              Petitioner,<br><br>        v.<br><br>CHARLES W. CALLAHAN,<br><br>                              Respondent. | Case No. 18-CV-02969-LHK<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Arturo Veliz Cortez ("Petitioner") filed a petition for a writ of habeas corpus against Respondent Charles W. Callahan ("Respondent") pursuant to 28 U.S.C. § 2254. ECF No. 1. Petitioner challenged his 2016 criminal judgment. Respondent filed an answer, ECF No. 14, and Petitioner filed a traverse, ECF No. 22. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief. The Court accordingly DENIES the petition and a certificate of appealability.

## I.   BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in *People v. Cortez*, No. H041081, 2016 WL 6962539 (Cal. Ct. App. Nov. 29, 2016):

> The prosecution charged Cortez, a 43-year-old man, with sexually molesting two young girls: J., beginning at age 8 or 9, and her niece N., at age 4. At the time,

1

Cortez was living with his girlfriend, Irma A. J. is Irma's daughter. N. is the daughter of Maria A., who is Irma's daughter and J.'s older half-sister.

Police began their investigation in November 2012, after N. told Maria that Cortez had touched her at a birthday party. In the course of the investigation, J., then 11 years old, told police Cortez had molested her multiple times over the course of several years while he was living with her and Irma.

### 1. Lewd or Lascivious Act on N.

On November 18, 2012, Maria and her husband, David C., took N. to a family member's birthday party at Irma's apartment in San Jose. Maria and her husband left N. at the party while they went shopping. After about two and a half hours, they returned to the party. Cortez, who was at the party, was drinking beer and appeared to be "buzzed." After spending about three more hours at the party, Maria and her husband left with N.

As the family was walking to their car, N. pointed to her buttocks and said, "Owie." In the past, N. had used this expression when she had not sufficiently wiped herself after using the bathroom, so Maria asked her if she had wiped herself properly. N. said "yes" and the family kept walking. N. then said "owie" again, whereupon Maria asked her if anybody had touched her. N. stated that "Tata" had touched her, referring to Cortez. Maria told N. not to lie, and N. denied lying. N. said Cortez had grabbed the television remote control away from her and touched her "torta," the term she used to refer to her vagina. She gestured with her hand by placing it on her vagina and moving her hand back and forth three times. At that point, Maria decided to go back to the party with her husband and N. to confront Cortez.

When they arrived back at Irma's apartment, Maria called Irma and asked her to come outside. When Irma came outside, Maria told N. to tell Irma what happened. N. said, "Tata touched me," and she pointed to her vagina. Irma said she had not seen anything happen. She stated that N. had not been by herself, and that N. had been with Irma or J. the entire time.

Maria then took N. into Irma's apartment. N.'s father, who was angry and upset, stayed outside. Once inside, Maria took N. to a bathroom where Maria removed N.'s underwear and examined her physically. Maria did not see any redness or bleeding.

After examining N. for about ten minutes, Maria took her to confront Cortez. When Maria asked Cortez what happened, he responded, "What do you mean?" N. immediately stated, "Tata, you touched me." Cortez denied doing so, whereupon N. repeated the accusation and gestured toward her vagina. Cortez again denied touching N. Maria and N. then left the apartment and returned home. Maria did not call the police that day.

The next morning, N. told Maria, "Mommy, do you remember Tata touched me?" Maria called the police that afternoon. A police officer arrived and interviewed N. together with Maria and her husband. In talking to the police officer, N. changed her explanation of what happened. At first, N. claimed the touching happened in the bedroom. She then stated it happened in the living room. She then said it happened in the kitchen. She stated Cortez touched her over her clothing.

N. was five years old when she testified at trial.2 Using a stuffed hippopotamus doll, she indicated Cortez touched her between the legs. She testified that Cortez touched her "torta" under her clothing while they were in the bedroom at Irma's home.

### 2. Sexual Assaults Upon J.

J. was 12 years old at the time of trial. She testified as follows. Cortez began dating Irma when J. was in elementary school. At some point, Cortez moved into Irma's home in San Jose. J. and several other relatives lived there at the same time.

The first touching incident occurred when J. was lying on a bed in her mother's bedroom watching television. Cortez entered the room, pulled up a chair, and sat next to the bed. He then reached out, touched J.'s leg, and moved his hand up her leg. J. thought it was an accident because Cortez had been drinking.

J. described another incident involving the family dog's food bowl. J. went to her mother's bedroom to look for the bowl and saw Cortez in the room. He told J. to look under the bed for the bowl. When she did so, he put his hand on her buttocks. She asked him whether he touched her on purpose; Cortez claimed it was an accident.

The touching incidents continued to happen. Cortez touched J. on her vagina and breasts, both over and under her clothes, and inside her vagina. On one occasion, J. was taking a nap with a blanket in her bedroom when Cortez came in. Cortez got on the bed and covered himself with the same blanket. J. then took the blanket off herself and told him she did not feel comfortable. He hugged her and touched her vagina over her shorts. J. struggled to wiggle away and was eventually able to get out of the bed.

J. testified about several incidents involving vaginal penetration. In one incident, she was lying on her bed trying to fall asleep with headphones on. Cortez entered the room and lay on top of her. He touched her breast area with one hand and put his other hand on her vagina under her clothes. He then squeezed her breasts and inserted his fingers into her vagina, causing her pain. J. struggled to get out from under him and hit him in the stomach, whereupon he got off her and she ran outside.

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On another occasion, J. was at the swimming pool in the apartment complex where she lived, wearing a swimsuit. She went back to her apartment to change out of her swimsuit. After she put on her clothes, Cortez entered the bedroom and got on top of her on the bed. He put his penis inside her against her will, causing her pain. When he was finished, he told J. it was "our little secret." When she went to the bathroom, a white liquid came out of her.

Another act of sexual intercourse occurred around the time J.'s mother lost her job at the HP Pavilion. J. was in her bedroom at night when she awoke to find Cortez on top of her. She had gone to bed wearing pants or underwear, but they were no longer on her. Cortez was moving up and down with his penis inside her. She struggled against him, but he did not stop. Later, when J. went to the bathroom, she again saw the white liquid come out of her.

J. also described an incident when Cortez grabbed her hand and put it on his penis while they were sitting on the couch together. Cortez used force to accomplish the act; J. did not touch him voluntarily. This happened two or three other times.

At some point, J. told Maria, her older sister, that Cortez had touched her. Maria told J. to tell Irma, but J. felt too uncomfortable about it to tell Irma. After Maria told Irma what J. had said, Irma questioned J. but did not believe her. Irma once questioned J. about it in front of Cortez, and he denied touching her. Irma continued to question J. about her claims, so J. eventually changed her response and claimed it was all a joke. Irma then grounded J. for lying.

In November 2012, shortly after N. accused Cortez of touching her at the birthday party, Maria told J. about N.'s accusation. In response, J. decided to reassert her allegations against Cortez. She testified, "now I felt that they would have to believe me [...] [b]ecause I wasn't the only one that had experienced that." Accordingly, J. again told Maria that Cortez had been molesting her. J. thought Maria believed her this time.

In her testimony, J. admitted she had previously made an allegation of sexual assault against another one of Irma's former boyfriends. She admitted she had testified at the preliminary hearing that the allegation was false. In her trial testimony, however, she testified that the boyfriend had in fact touched her thighs and legs, but she was unsure whether it was "a good touch" or "a bad touch."

### 3. Subsequent Events

After Maria contacted the police about N.'s claims, J. also made statements to the police. J. initially told the police Cortez touched her inappropriately on two occasions, and that the touching occurred over her clothes.

The police arranged for Maria to conduct a pretext phone call to Cortez. Cortez denied touching N., but he stated that she was in the bedroom with him. He said he

told N. to close the door on her way out of the room and he threatened to hit her if she did not do so. Cortez denied touching J.

The police also arranged for Maria to make a pretext call to J. In the call, J. told Maria there were only two incidents with Cortez. J. said one of the touchings occurred over a blanket while she was lying down watching television. She said the other incident involved an attempt to touch her, but that Cortez did not succeed. She did not say Cortez had put his fingers or penis in her vagina. However, J. also said she did not want to talk on the phone because Cortez and Irma were nearby.

In December 2012, San Jose Police Officer Emilio Perez attempted to arrange a follow-up meeting with N. and her family. After several unsuccessful attempts, Officer Perez contacted Maria and arranged to interview N. at the Children's Interview Center on December 26, 2012. At trial, the prosecution played a videotape of the interview for the jury.3

After N.'s interview at the Children's Interview Center, Officer Perez spoke with J. J. described approximately nine different incidents involving various types of touching by Cortez. She told Officer Perez that Cortez had put his penis in her vagina two to three times, and he had put his fingers in her vagina around five to six times. She described one incident in which Cortez got on top of her and put his body weight on her while she was lying on her mother's bed.

On the same day as J.'s interview with Officer Perez, she also spoke with a social worker. She told the social worker the touchings were occurring every other day.

J. underwent a Sexual Assault Response Team (SART) exam on December 27, 2012. The exam revealed no evidence of trauma. The examining SART nurse testified that this did not show an absence of prior sexual contact because enough time had passed for any trauma to heal.

Police interviewed Cortez at the San Jose Police Department on the same day—December 27, 2012. After he initially denied touching J. or N. inappropriately, Cortez admitted molesting J. He admitted he had inserted both his fingers and his penis into her vagina on multiple occasions. He continued to deny molesting N. Police then took Cortez into custody.

On December 30, 2012, Cortez made five phone calls to Irma from the county jail. Cortez told Irma, "They need to go do what they need to do. Both need to be there tomorrow at 1:00." Cortez told Irma "they" needed to go to court and that "if they say that well it will help me." Irma promised Cortez she would help him. Cortez added, "Both of them have to go and say that." Referencing J., Cortez later said, "Let's see why she doesn't go—why doesn't she go to the also to the fucking court and also tell what she lied about; . . . hey you know what I lied, he didn't do anything to me, he didn't do anything because I lied. Why is she doing this." He

added, "They have to see that it's just that she has to say that it is not true. That they pressured her."

The next day, the trial court arraigned Cortez. A woman who identified herself as the "victim's mother" went to the hearing, approached a deputy district attorney, and told her that "it was all a misunderstanding, that the girls were pressured to make the statements that they did."

On January 4, 2013, Irma, Maria, N. and J. went to the San Jose Police Department to see Officer Perez. Maria told Officer Perez that N. and J. wanted to speak with him. Officer Perez took J. aside and spoke with her alone. She appeared upset and she was reluctant to speak. Officer Perez asked her if she had been telling him the truth, and she nodded in response. (In her trial testimony about this meeting, J. stated that she told Officer Perez everything was a lie, but she testified that in fact she had been telling the truth.)

Officer Perez, the social worker, and the prosecutor visited J. at her home on January 9, 2013. Irma was present but in another room when the social worker interviewed J. J. recanted her accusations and told the social worker that everything she had told the police was a lie. She said she had lied because she did not like Cortez and wanted to get him out of the house. She also said Cortez was only playing games with her and did not intend to touch her. She stated that she had been confused about the location of her vagina. However, at some point in the interview, J. whispered that Cortez had in fact been touching her. In her testimony about the interview, J. stated that she told the social worker she had been lying because she felt bad for Irma.

The prosecutor then spoke with J. and told her the case was going to go forward regardless of what J. had said. The prosecutor said she herself would be "the bad guy" and that she would not tell Irma what J. said. At that point, J. said she had not been lying.

J. was subsequently removed from her home and taken into protective custody.

**B. Procedural Background**

The prosecution charged Cortez with eight counts: Counts One and Two—Aggravated sexual assault (rape) of a child (J.) under 14 years of age and seven or more years younger than defendant (Pen. Code, §§ 261, subd. (a), 269)6; Counts Three and Four—Aggravated sexual assault (sexual penetration) of a child (J.) under 14 years of age and seven or more years younger than defendant (§§ 269, 289, subd. (a)); Counts Five and Six—Lewd or lascivious act on a child (J.) by force (§ 288, subd. (b)(1)); Count Seven—Lewd or lascivious act on a child (N.) under 14 years of age (§ 288, subd. (a)); and Count Eight—Attempting to dissuade a witness or victim (J.) (§ 136.1, subd. (a)). As to Counts Five through Seven, the

United States District Court
Northern District of California

prosecution alleged Cortez committed lewd or lascivious acts against more than one victim. (§ 667.61, subds. (b) & (e).)

At trial, the jury found defendant guilty on all eight counts and found true the multiple victim allegations. The trial court sentenced defendant to an aggregate term of 105 years to life consecutive to three years. The term consisted of seven consecutive terms of 15 years to life for Counts One through Seven, consecutive to the upper term of three years for Count Eight.

*Cortez*, 2016 WL 6962539, at *1–5.

On November 29, 2019, the California Court of Appeal affirmed the judgment. *See id.* On February 22, 2017, the California Supreme Court summarily denied a petition for review. *See* Ans. Exh. H.

Petitioner filed the instant federal habeas petition on May 18, 2018. *See* ECF No. 1 ("Pet'n"). On January 14, 2020, United States Magistrate Judge Kandis A. Westmore ordered Respondent to show cause why the petition should not be granted. ECF No. 6. On June 4, 2020, Respondent filed an answer, ECF No. 14 ("Ans."), and exhibits thereto, ECF Nos. 15–19. On July 28, 2020, Petitioner filed a traverse. ECF No. 22 ("Tr.").

When the last state court to adjudicate a federal constitutional claim on the merits does not provide an explanation for the denial, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale*." Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.* Here, the California Supreme Court did not provide an explanation for its denial of the petition for review. *See* Ans. Exh. H. Petitioner did not argue that the California Supreme Court relied on different grounds than the state appellate court. *See generally* Pet. Accordingly, this Court will "look through" the California Supreme Court's decision to the state appellate court's decision.

## II.    LEGAL STANDARD

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The

1    petition may not be granted with respect to any claim that was adjudicated on the merits in state

2    court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary

3    to, or involved an unreasonable application of, clearly established Federal law, as determined by

4    the Supreme Court of the United States; or (2) resulted in a decision that was based on an

5    unreasonable determination of the facts in light of the evidence presented in the State court

6    proceeding." 28 U.S.C. § 2254(d).

7        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

8    arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a

9    question of law or if the state court decides a case differently than [the] Court has on a set of

10   materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the

11   'reasonable application clause,' a federal habeas court may grant the writ if the state court

12   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

13   applies that principle to the facts of the prisoner's case." *Id.* at 413.

14       "[A] federal habeas court may not issue the writ simply because the court concludes in its

15   independent judgment that the relevant state-court decision applied clearly established federal law

16   erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411. A federal

17   habeas court making the "unreasonable application" inquiry should ask whether the state court's

18   application of clearly established federal law was "objectively unreasonable." *Id.* at 409. This is a

19   "highly deferential" standard, which is "difficult to meet" and "demands that state-court decisions

20   be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

21       The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

22   in the holdings (as opposed to the dicta) of the United States Supreme Court as of the time of the

23   state court decision. *Id.* at 412. Clearly established federal law is defined as "the governing legal

24   principle or principles set forth by the [United States] Supreme Court." *Lockyer v. Andrade*, 538

25   U.S. 63, 71–72 (2003).

26   **III.    DISCUSSION**

27       In the petition, Petitioner raises the following claims: (1) Petitioner's confession was

8

United States District Court
Northern District of California

involuntary and was obtained and admitted in violation of Petitioner's Fifth Amendment privilege against self-incrimination and Fourteenth Amendment right to due process; (2) instructing the jury that consent is not a defense to forcible lewd acts violated Petitioner's Sixth Amendment right to jury trial; (3) instructing the jury that whether Petitioner intended to cause a witness to tell the truth was immaterial to his guilt violated Petitioner's Sixth Amendment right to jury trial; (4) misjoinder of the six sex offenses involving J. with the one sex offense involving N. violated Petitioner's Fourteenth Amendment right to a fair trial; (5) admitting the out-of-court statements of N. violated Petitioner's Fourteenth Amendment right to due process and Sixth Amendment right to confrontation; (6) failing to instruct the jury on lesser included offenses violated Petitioner's Fourteenth Amendment right to due process and Sixth Amendment right to a jury trial; and (7) the cumulative effect of the prejudice from all the errors violated Petitioner's Fourteenth Amendment right to due process and a fair trial. Pet'n at m-1 to m-21. The Court addresses each claim in turn.

### A. Voluntariness of Petitioner's Confession

Petitioner initially contends that the trial court erred in failing to suppress Petitioner's confession to San Jose Police Officer Emilio Perez because Petitioner's confession was involuntary. Pet'n at m-1 to m-5.

"[T]he ultimate issue of 'voluntariness' is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110 (1985). Although the state court's determination of voluntariness is not entitled to deference, the "[f]act-finding underlying the state court's decision is accorded the full deference of [28 U.S.C. § 2254(e)(1)]." *Kirkpatrick v. Chappell*, 950 F.3d 1118, 1133 (9th Cir. 2020) (quoting *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004)). Accordingly, below, the Court provides the facts relevant to the voluntariness of Petitioner's confession. The Court then addresses Petitioner's argument.

### 1. Relevant facts

The state appellate court summarized the facts relevant to the admission of Petitioner's confession as follows:

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Officer Perez interviewed Cortez in one of the interview rooms at the San Jose Police Department's Sexual Assault Investigation Unit on December 27, 2012. By that time, the police had already interviewed N. and J. in detail. Officer Perez called Cortez and informed him police wanted to talk with him at the police department. Cortez went to the police department on his own volition. When he arrived, the police did not place him under arrest, handcuff him, or tell him he could not leave. Officer Perez was the sole questioner, and he did so almost entirely in Spanish. The interview was about 70 minutes long and was recorded on video with audio.

At the start of the interview, Officer Perez questioned Cortez about various biographical facts. When asked his date of birth, Cortez provided an incorrect date. Officer Perez then fully advised Cortez of his rights under *Miranda* and Cortez acknowledged he understood them. Cortez then continued to answer Officer Perez's questions. The two men appeared relaxed and casual throughout the interview. Officer Perez maintained a normal tone of voice and did not appear verbally or physically aggressive at any time.

Cortez told Officer Perez he did not know why police wanted to question him. Officer Perez told Cortez "there are some allegations against you" and "there's a lot of evidence in this case." Officer Perez admonished Cortez to tell the truth and warned him against lying. Officer Perez then raised N.'s allegations concerning the incident at the birthday party. Cortez repeatedly denied touching N. He said he was in his bedroom watching television when N. came in, and he threatened to hit her, whereupon she left. Officer Perez asked if Cortez was drunk at the time, but Cortez denied he was.

Officer Perez then questioned Cortez about J.'s allegations, again warning him that "there's a lot of evidence against you." Officer Perez said J. had been examined by a doctor who conducted a SART exam on her. Officer Perez said they collected her clothes and took DNA samples from them. Cortez initially denied touching J. At that point, Officer Perez told Cortez he was going to collect DNA samples from him. They took several breaks while Officer Perez, with Cortez's consent, swabbed his mouth with Q–Tips. Officer Perez then left briefly with the samples.

Upon his return, Officer Perez told Cortez the samples would be sent to a laboratory, and that someone would report back 15 minutes later on whether Cortez's DNA had been found on J.'s clothes or body. Officer Perez then resumed his questioning of Cortez. Officer Perez admonished him not to lie and told him, "you have to talk with the truth because everything that you're saying here, the District Attorney will review it." Officer Perez explained that everything Cortez said would be reported to the district attorney, who "sees the report and he decides what's going to happen." He added that the district attorney would decide if "Arturo [would] end up in jail or the charges can go [if he] doesn't have enough evidence."

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Officer Perez emphasized that if Cortez was lying, that would "look bad," and he admonished Cortez again to tell the truth. Cortez claimed he had told the truth.

Officer Perez then told Cortez the doctor would be able to tell if Cortez had molested J. When Cortez again denied touching her, Officer Perez responded, "Yes it did happen because ... because we have the evidence. Okay so you still insist that no, no, and that no ... that no, that no ... is not good ... 'Cause it did happen, we have evidence, your fingerprints. We already have it for a long time."

After further questioning, Cortez began to allow that he may have touched J. At first, he explained that it happened when they were "playing." He stated that he did not want to touch her, but added, "When we were playing ... yes, yes I touched her." He explained that he would throw her on the bed and his hand would touch her vagina, but he claimed he only touched her over her clothes. He then allowed that his finger may have gone into her vagina on two occasions when they were playing.

When Officer Perez asked if Cortez had put his penis in J., he initially denied it. After Officer Perez told him J. had seen semen inside her, Cortez admitted he may have penetrated J. once. Cortez defended himself, stating, "she always wanted to do it." He said she always wanted to caress him, grab him, and kiss him, and that "she always grabbed my parts." He said she would take off her clothes, that she would try to take off his shorts, and that "sometimes she would go on top of me." He maintained he only put his penis in her one time, and that he did not want to do so. However, he continued to deny he had molested N.

At the end of the interview, Officer Perez suggested that Cortez write a letter of apology or confession. Cortez agreed to do so and wrote four letters in Spanish— one each to J., N., Irma, and the judge. The letters to J. and Irma were "general apology" letters asking for forgiveness and blaming his unspecified conduct on his alcoholism. His letter to N. asked her to forgive him. He wrote that he wanted her and her parents to know "he would never do anything like that to her." His letter to the judge expressed regret for his conduct and stated, "I don't know how I could do this."

In his in limine motions, Cortez challenged the admissibility of the above statements and requested a hearing under Evidence Code section 402. The trial court held a pretrial hearing on the matter at which Officer Perez testified. Officer Perez testified that he did not offer Cortez any deal with the district attorney or offer to talk to the judge on Cortez's behalf. Officer Perez admitted to using multiple "ruses" in which he told Cortez there was or would be evidence implicating him when in fact there was no such evidence. For example, Officer Perez admitted that his use of the purported DNA testing was a "ruse" and that in

fact there was no DNA evidence implicating Cortez. He also admitted his assertion of fingerprint evidence was false.

The court found no constitutional violations from the interrogation and denied the motion to suppress.

*Cortez*, 2016 WL 6962539, at *5–7.

### 2. The admission of Petitioner's confession does not warrant federal habeas relief.

Petitioner contends that the trial court erred in failing to suppress Petitioner's confession to San Jose Police Officer Emilio Perez because Petitioner's confession was involuntary. Pet'n at m-1 to m-5. The Court rejects Petitioner's claim for two independent reasons. First, the Court concludes that Petitioner's confession was voluntary. Second, Petitioner has not demonstrated that he was prejudiced by the admission of his confession. The Court addresses each of these issues in turn.

### a. Petitioner's confession was voluntary.

The Fourteenth Amendment prohibits the admission of involuntary confessions in state criminal cases. *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960). To be voluntary, a confession must be "the product of a rational intellect and a free will." *Id.*

The voluntariness of a confession is evaluated by reviewing the police conduct in extracting the statements and the effect of that conduct on the suspect. *Miller v. Fenton*, 474 U.S. at 116. Without police misconduct casually related to the confession, there is no basis for concluding that a confession was involuntary in violation of the Fourteenth Amendment. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

To determine the voluntariness of a confession, the Court must consider the effect that "the totality of the circumstances" had upon the will of the defendant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226–27 (1973). On federal habeas review, courts "consider the totality of the circumstances under a highly deferential standard to determine the reasonableness of the state court's conclusion that [the petitioner's] statements were voluntary." *Balbuena v. Sullivan*, 980

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

1   F.3d 619, 633 (9th Cir. 2020). "The 'totality of the circumstances' test is a general standard

2   requiring 'even greater deference under [the Antiterrorism and Effective Death Penalty Act of

3   1996].'" *Id.* (quoting *Cook v. Kernan*, 948 F.3d 952, 968 (9th Cir. 2020)).

4         To determine the voluntariness of a confession, the Court asks whether the government

5   "obtained the statement by physical or psychological coercion or by improper inducement so that

6   the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir.

7   1988). In determining whether the defendant's will was overborne, the Court "takes into

8   consideration the totality of all the surrounding circumstances—both the characteristics of the

9   accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434

10  (2000). The factors to be considered include the degree of police coercion; the length, location and

11  continuity of the interrogation; and the defendant's maturity, education, physical condition, and

12  mental health. *Withrow v. Williams*, 507 U.S. 680, 693–94 (1993).

13        In cases involving psychological coercion, "the pivotal question . . . is whether[, in light of

14  the totality of the circumstances,] the defendant's will was overborne when the defendant

15  confessed." *Ortiz v. Uribe*, 671 F. 3d 863, 869 (9th Cir. 2011) (alteration in original) (quoting

16  *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993)). The officer's interrogation

17  techniques must be "the kind of misbehavior that so shocks the sensibilities of civilized society as

18  to warrant a federal intrusion into the criminal processes of the States." *Moran v. Burbine*, 475

19  U.S. 412, 433–34 (1986). A statement is involuntary if it is "extracted by any sort of threats or

20  violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of

21  any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (quotation omitted). Without more,

22  lying about or exaggerating the amount of evidence against a criminal defendant does not create

23  deception that rises to the level of a constitutional violation. *See Frazier v. Cupp*, 394 U.S. 731,

24  739 (1969) (concluding that the fact that the police misrepresented the statements that a witness

25  had made was "insufficient . . . to make this otherwise voluntary confession admissible"); *see also*

26  *United States v. Miller*, 984 F.3d at 1031 (concluding that the FBI's statements to defendant that

27  defendant was involved in an espionage investigation did not make defendant's confession

28

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1  involuntary because "deception does not render [a] confession involuntary").

2      Considering the totality of the circumstances, the Court concludes that Petitioner's

3  confession was voluntary. The Court addresses in turn: (1) the circumstances of the interrogation,

4  (2) Officer Perez's conduct, and (3) Petitioner's characteristics.

5      First, the circumstances of the interrogation suggest that the interrogation was voluntary. In

6  the instant case, Petitioner was in a police station when he was interrogated, which weighs slightly

7  against a finding of voluntariness. *See Dickerson*, 530 U.S. at 435 ("Custodial police interrogation,

8  by its very nature, isolates and pressures the individual."). However, the other facts surrounding

9  Petitioner's interrogation suggest that the interrogation was voluntary. Indeed, Petitioner went to

10  the police station of his own volition. *Cortez*, 2016 WL 6962539, at *9. Furthermore, Petitioner

11  was not told that he was under arrest, told he could not leave, or handcuffed during the interview.

12  *Id.* Petitioner was advised of his *Miranda* rights and acknowledged that he understood them. *Id.*

13  Petitioner then was interviewed by Officer Perez alone for a little over an hour. *Id.* at *6, *9. The

14  interview was conducted almost entirely in Spanish and was recorded on video with audio. *Id.*

15  These circumstances weigh in favor of a finding of voluntariness. *See Amaya-Ruiz v. Stewart*, 121

16  F.3d 486, 494 (9th Cir. 1997), *overruled on other grounds by United States v. Preston*, 751 F.3d

17  1008, 1019–20 (9th Cir. 2008) (rejecting claim that confession was involuntary where "[t]he

18  atmosphere surrounding the questioning of [the suspect] was not coercive" and "[t]he questioning

19  lasted only forty minutes"); *see also United States v. Haswood*, 350 F.3d 1024, 1028 (9th Cir.

20  2003) (observing that "coercion typically involves far more outrageous conduct" than an all-day

21  interrogation).

22      Second, Officer Perez's conduct does not weigh in favor of a finding of involuntariness. A

23  statement is involuntary if extracted by threats or obtained by promises. *Hutto*, 429 U.S. at 30.

24  However, in the instant case, Officer Perez did not threaten Petitioner or make him any promises

25  of leniency. Officer Perez simply told Petitioner to tell the truth because the District Attorney

26  would review Petitioner's statements and would decide if Petitioner was going to jail or not.

27  *Cortez*, 2016 WL 6962539, at *6. Thus, Officer Perez did not make Petitioner promises of

28

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

leniency. *See Balbuena*, 980 F.3d at 629 ("Generally telling a suspect to speak truthfully does not amount to police coercion."); *Amaya-Ruiz*, 121 F.3d at 494 (rejecting claim that confession was involuntary where officers encouraged the suspect to tell the truth and said "[w]e can forgive your lies, but the United States Court system will not forgive your lies" because "[e]ncouraging [the suspect] to tell the truth . . . did not amount to coercion").

Officer Perez also told Petitioner that "there's a lot of evidence in this case." *Cortez*, 2016 WL 6962539, at *6. Specifically, after Petitioner denied N.'s and J.'s allegations, Officer Perez told Petitioner that "it did happen, we have evidence, your fingerprints. We already have it for a long time." *Id.* However, the United States Supreme Court has held that exaggerating about the amount of evidence against a suspect, without more, does not make a suspect's statement involuntary. *See Frazier*, 394 U.S. at 739 (concluding that the fact that the police misrepresented the statements that a witness had made was "insufficient . . . to make this otherwise voluntary confession admissible"); *see also United States v. Miller*, 984 F.2d at 1031 (stating that "deception does not render [a] confession involuntary").

Moreover, even if these deceptive tactics weigh in favor of involuntariness, Officer Perez's other behavior weighs in favor of a finding of voluntariness. During the interview, which was recorded on video with audio, Officer Perez maintained a normal tone of voice and was not physically or verbally aggressive. *Cortez*, 2016 WL 6962539, at *5, *8. In addition, nothing in Petitioner's appearance on the video suggested that he experienced discomfort or undue pressure at any point in the interview. *Id.* Rather, Officer Perez and Petitioner appeared relaxed during the interview. *Id.* These circumstances also suggest that Petitioner's confession was voluntary. *See Pollard v. Garza*, 290 F.3d 1030, 1035–36 (9th Cir. 2002) (concluding that a suspect's confession was voluntary where the suspect showed no signs of physical discomfort).

Finally, Petitioner's characteristics do not weigh in favor of a finding of involuntariness. Petitioner was 43 years old at the time, and Petitioner does not assert that he was especially vulnerable to coercion as a result of his mental abilities, his intelligence, or his level of education. *Id.* at *9. Indeed, Petitioner had multiple previous misdemeanor convictions, which suggests that

15

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Petitioner may have had experience with law enforcement. *Id.* These circumstances also suggest

2    that Petitioner's confession was voluntary. *See Balbuena*, 980 F.3d at 634 (holding that confession

3    was voluntary where "there [was] no evidence that [the suspect] had a limited IQ or that he was

4    'easily confused' and 'highly suggestible and easy to manipulate'") (quotation omitted).

5          Considering the totality of the circumstances, the Court concludes that Petitioner's

6    confession was voluntary. Although Officer Perez exaggerated the evidence against Petitioner,

7    exaggeration of the evidence against a suspect, without more, does not make a confession

8    involuntary. Moreover, even if Officer Perez's deceptive tactics weigh against a finding of

9    voluntariness, the totality of the circumstances support a finding that Petitioner's confession was

10   voluntary. *See Frazier*, 394 U.S. at 739 (concluding that the fact that the police misrepresented the

11   statements that a witness had made did not make confession involuntary when petitioner got

12   partial warnings of his constitutional rights and was questioned for a short duration of time).

13   Accordingly, the Court concludes that Petitioner's confession was voluntary.

14          **b.   Petitioner was not prejudiced.**

15          In any event, the Court concludes that Petitioner was not prejudiced by the admission of

16   his confession. If the erroneous admission of a petitioner's statements was harmless, the petitioner

17   is not entitled to relief. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding that the

18   erroneous admission of a confession is subject to the harmless error standard).

19          To determine whether a trial court error is harmless, federal courts apply *Brecht v.*

20   *Abrahamson*, 507 U.S. 619 (1993). *Davis v. Ayala*, 135 S. Ct. 2187, 2196 (2018) (stating that the

21   *Brecht v. Abrahamson* test is used to determine whether an error was harmless). To be entitled to

22   relief, the petitioner must show that there is "more than a 'reasonable possibility' that the error was

23   harmful." *Id.* at 2198 (quoting *Brecht*, 507 U.S. at 637). Under *Brecht*, "relief is proper only if the

24   federal court has 'grave doubt about whether a trial error of federal law had substantial and

25   injurious effect or influence in determining the jury's verdict.'" *Id.* at 2197–98 (quoting *O'Neal v.*

26   *McAninc*h, 513 U.S. 432, 436 (1995)).

27          In the instant case, the Court does not have "grave doubt" that any erroneous admission of

28
16

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner's confession had "substantial and injurious effect or influence in determining the jury's verdict." *Id.* Petitioner's confession was critical evidence against him. *See Fulminante*, 499 U.S. at 296 ("[A] defendant's own confession is probably the most probative and damaging evidence that can be admitted against him."). However, Petitioner's confession was accompanied by other critical evidence, including the testimony of J. and N., the victims of Petitioner's offenses; out-of-court statements by J. and N.; and corroborating testimony by Officer Perez, N.'s mother and father, and several other law enforcement witnesses. *See, e.g.*, Ans. Exh. B. at 118–54 (testimony of J. regarding Petitioner's sexual abuse of her); 326–31 (testimony of N.'s dad regarding when N. told her parents that Petitioner touched her); *id.* at 387–90 (testimony of N.'s mom regarding when N. told her parents that Petitioner touched her); *id.* at 357–59 (testimony of N. about Petitioner touching her); *id.* at 541 (testimony of Officer Perez about J.'s allegations).

Moreover, the jury was given California Criminal Jury Instruction 1190, which instructs that a determination of guilt regarding sexual assault crimes does not require the victim's testimony to be corroborated by other evidence. *See* Ans. Exh. A at 487 (jury instruction stating that "[c]onviction of a sexual assault crime may be based on the testimony of a complaining witness alone"). Regardless, as discussed above, there was extensive corroborating testimony from other witnesses in addition to the two victims' trial testimony and out-of-court statements.

In contending that J.'s testimony against Petitioner was not critical evidence, Petitioner asserts that J.'s testimony was inconsistent. Pet'n at m-4 to m-5. On one occasion, J. stated that she had lied. *See* Ans. Exh. B at 245–46. However, multiple witnesses testified that J., who was sexually abused when she was between 8 and 11 years old and who was 12 years old at the time of the trial, was pressured to recant her testimony by J.'s own mother, Irma, who was Petitioner's girlfriend, as well as Petitioner, both of whom lived with J. Specifically, Janet Caudillo, who interviewed J., testified that J. told Caudillo that J. recanted because J.'s mother did not believe J. Ans. Exh. B at 222. Additionally, Mary Robinson, a Deputy District Attorney, testified that J.'s mother told Robinson that J. and N. had been pressured to make their statements. *Id.* at 255–56. Officer Perez also testified that J.'s mother had told J. that J.'s mother did not believe J. *Id.* at 540

17

United States District Court
Northern District of California

1    In addition, Petitioner himself pressured J. to recant her testimony. Specifically, in jail calls

2    that were recorded and were played for the jury during trial, Petitioner called his girlfriend, J.'s

3    mother, from jail, and told her that J. and N. needed to recant their allegations. *Id.* at 473.

4    Following Petitioner's conduct in pressuring J. to recant her testimony, the jury found Petitioner

5    guilty of attempting to dissuade a witness. *Cortez*, 2016 WL 6962539, at *5. Despite the efforts of

6    J.'s mom and Petitioner to pressure J. to recant her testimony, J. later confirmed that she was

7    initially telling the truth. *See* Ans. Exh. B at 118–54 (testimony of J. regarding Petitioner's sexual

8    abuse of her).

9    Petitioner further asserts that the testimony and out-of-court statements of N., who was five

10   years old at the time of trial, were inconsistent. Pet'n at m-5. However, N.'s testimony and out-of-

11   court statements were consistent with each other as well as the testimony of several other

12   witnesses. *See* Ans. Exh. B. at 357–59 (N.'s testimony at trial that Petitioner touched her); *id.* at

13   326–31(testimony of N.'s dad regarding when N. told her parents that Petitioner touched her); *id.*

14   at 387–90 (testimony of N.'s mom regarding when N. told her parents that Petitioner touched her);

15   *id.* at 568 (testimony of Officer Perez regarding touching of N.). Thus, the testimony of N., J., and

16   several other witnesses constituted critical evidence against Petitioner even without Petitioner's

17   confession.

18   In contending that the involuntariness of Petitioner's confession is grounds for this Court

19   to grant habeas relief to Petitioner, Petitioner relies on *Campos v. Stone*, a decision from another

20   court in this district that granted habeas relief based on the erroneous admission of petitioner's

21   involuntary confession. 201 F. Supp. 3d 1083 (N.D. Cal. 2016). The Court concludes that *Campos*

22   is distinguishable. In *Campos*, there was only one victim. *Id.* at 1087. Moreover, without

23   petitioner's confession, "the evidence against [petitioner] was otherwise weak." *Id.* at 1099.

24   "[W]ithout [petitioner's] statement, the only evidence against [petitioner] consisted of [the

25   victim's] uncorroborated statements, which were inconsistent and contradicted by other evidence."

26   *Id.* Moreover, the jury "clearly discredited some of [the victim's] statements, as demonstrated by"

27   petitioner's acquittal on six of the seven offenses with which he was charged. *Id.*

28
Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

1   By contrast, in the instant case, the evidence against Petitioner included not only his

2   confession but also the testimony and statements of the two victims, N. and J., the latter of whom

3   testified regarding multiple sexual offenses that Petitioner committed against her, and the

4   corroborating testimony of several other witnesses. *See, e.g.*, Ans. Exh. B. at 118–54 (testimony of

5   J. regarding Petitioner's sexual abuse of her); 326–31 (testimony of N.'s dad regarding when N.

6   told her parents that Petitioner touched her); *id.* at 387–90 (testimony of N.'s mom regarding when

7   N. told her parents that Petitioner touched her); *id.* at 357–59 (testimony of N. about Petitioner

8   touching her); *id.* at 541 (testimony of Officer Perez about J.'s allegations). Based on this

9   evidence, Petitioner was convicted of all eight counts with which he was charged. *Cortez*, 2016

10  WL 6962539, at *5. In light of the extensive evidence of Petitioner's guilt, the Court does not have

11  "grave doubt" that any erroneous admission of Petitioner's confession had "substantial and

12  injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. at 2197–98

13  (quotation omitted). Thus, Petitioner is not entitled to habeas relief on this claim.

14  **B. Instructing the Jury that Consent is Not a Defense to Forcible Lewd Act**

15  Petitioner next asserts that the trial court erred in instructing the jury that consent is not a

16  defense to the force element of forcible lewd or lascivious acts in violation of California Penal

17  Code § 288(b)(1). Pet'n at m-5 to m-6. Petitioner contends that the trial court's instruction

18  prevented the jury from deciding a fact necessary to prove the force element of the offense and

19  thus violated Petitioner's Sixth Amendment right to jury trial. *Id.*

20  On this issue, the state appellate court concluded that the trial court did not err in

21  instructing the jury that "[i]t is not a defense that the child may have consented to the act." *Cortez*,

22  2016 WL 6962539, at *17. In coming to this conclusion, the state appellate court relied on the

23  California Supreme Court's decision in *People v. Soto*, which held that "the victim's consent is not

24  a defense to the crime of lewd acts on a child under age 14 under any circumstances." 51 Cal. 4th

25  229, 233 (2011). In the instant case, both N. and J. were under fourteen years old at the time of the

26  crimes. *Cortez*, 2016 WL 6962539, at *1. Specifically, N. was 4 years old when Petitioner

27  allegedly molested her, and J. was between 8 and 11 years old when Petitioner allegedly molested

28

1   her. *Id.*

2       Respondent contends that Petitioner is not entitled to habeas relief on this claim because

3   this issue presents a state law question which cannot be challenged on federal habeas review. Ans.

4   at 14–15. For the reasons explained below, the Court agrees.

5       "[I]t is not the province of a federal habeas court to reexamine state-court determinations

6   on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The United States

7   Supreme Court has "repeatedly held that a state court's interpretation of state law, including one

8   announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas

9   corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Accordingly, a federal court cannot depart

10  from a state court's determination of the elements of a state offense. *See Hicks v. Feiock*, 485 U.S.

11  624, 629 (1988*) (rejecting argument that the state supreme court erred in determining the elements

12  of the offense because a federal court is "not at liberty to depart from the state appellate court's

13  resolution of . . . issues of state law"); *Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1988)

14  (concluding that a state court's determination on the elements of an offense "is not open to

15  challenge on habeas review"); *see also Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) (stating

16  that federal courts should avoid "intrusions upon the power of the States to define criminal

17  offenses").

18      In this claim, Petitioner contends that the trial court erred in instructing the jury that

19  consent is not a defense to the force element of forcible lewd or lascivious acts. Pet'n at m-5 to m-

20  6. Because Petitioner asserts that consent is not a defense to the force element of forcible lewd or

21  lascivious acts, Petitioner's claim raises the issue of what a state offense's elements are. A state

22  court's determination of the elements of a state offense is a state law issue that cannot be

23  challenged on federal habeas review. *See Stanton*, 146 F.3d at 728 (concluding that a state court's

24  determination on the elements of an offense "is not open to challenge on habeas review"). Thus,

25  this Court cannot consider Petitioner's claim on federal habeas review.

26      Even if this Court could consider Petitioner's claim on federal habeas review, the state

27  appellate court correctly concluded that Petitioner's claim was foreclosed by state law. The

28

20

United States District Court
Northern District of California

California Supreme Court has explicitly held that "the victim's consent is not a defense to the crime of lewd acts on a child under age 14 under any circumstances." *Soto*, 51 Cal. 4th at 233. Accordingly, even Petitioner conceded that his claim was foreclosed by state law. In his appeal at the state appellate court, Petitioner "acknowledge[d] that the California Supreme Court upheld this rule in *People v. Soto*," but Petitioner "argue[d] that case was wrongly decided." *Cortez*, 2016 WL 6962539, at *17. Therefore, Petitioner is not entitled to habeas relief on this claim.

### C. Instructing the Jury that Whether Petitioner Intended to Cause a Witness to Tell the Truth Was Immaterial to His Guilt

Petitioner next asserts that the trial court erred in instructing the jury that whether Petitioner intended to cause a witness to tell the truth was immaterial to his guilt for attempting to dissuade a witness or victim in violation of California Penal Code § 136.1(a)(2). Pet'n at m-6. Petitioner contends that the trial court's jury instruction, which the trial court gave in response to a jury question, violated Petitioner's Sixth Amendment right to a jury trial. *Id.*

On this issue, the state appellate court concluded that Petitioner "forfeited this claim by stipulating to the trial court's response" to the jury's question. *Cortez*, 2016 WL 6962539, at *20. The state appellate court then concluded that "nothing in the trial court's response misstated the law." *Id.* The state appellate court thus concluded that Petitioner's claim was without merit. *Id.* at *21.

Respondent contends that the state appellate court's decision rested on Petitioner's forfeiture of this claim, which is an adequate and independent state ground. Ans. at 15–17. For the reasons explained below, the Court agrees.

A federal court will not review substantive questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). In federal habeas cases, the "adequate and independent state ground" doctrine is a matter of comity and federalism. *Id.* A petitioner can avoid a procedural bar only if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

United States District Court
Northern District of California

failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750.

In the instant case, the state appellate court concluded that Petitioner had forfeited this claim because Petitioner stipulated to the jury instruction:

> As an initial matter, we note that Cortez forfeited this claim by stipulating to the trial court's response. (*People v. Harris* (2008) 43 Cal.4th 1269, 1317 [defendant waived claim by specifically agreeing to trial court's handling of jury question]; *People v. Rogers*, *supra*, 39 Cal.4th at p. 877 [counsel's acquiescence to court's response to jury question forfeited claim on appeal].)

*Cortez*, 2016 WL 6962539, at *20. Because the state appellate court relied on Petitioner's forfeiture to reject this claim, this Court must not review this claim if Petitioner's forfeiture constitutes an adequate and independent state ground.

For a state court rule to be adequate, the rule must be firmly established and regularly followed. *Walker v. Martin*, 562 U.S. 307, 316 (2011). A state court may be found inadequate when "discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law." *Id.* at 320 (quotation omitted).

The United States Supreme Court and the Ninth Circuit have recognized that California's contemporaneous objection rule is an adequate and independent state ground sufficient to bar the review of claims by a federal court. *See, e.g.*, *Ylst v. Nunnemaker*, 501 U.S. 797, 799, 805–06 (1991) (concluding that claim was procedurally barred where petitioner failed to object below); *Davis v. Woodford*, 384 F.3d 628, 653–54 (9th Cir. 2004) (same). Specifically, the Ninth Circuit has held that failure to contemporaneously object to a jury instruction can constitute an independent and adequate state ground. *See Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004) (concluding that defense counsel's failure to contemporaneously object to the challenged jury instruction, as required by "California's contemporary-objection rule," was an adequate and independent ground that barred consideration of petitioner's objection to the jury instruction).

Petitioner contends that there are not adequate state grounds here because California law holds that a reviewing court may exercise discretionary authority to review non-evidentiary claims on the merits, even without an objection having been made. Tr. at 9. However, the United States

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Supreme Court has held that a state court rule can be adequate even if it is discretionary. *Walker*,

2    562 U.S. at 316 (holding that a "discretionary state procedural rule" can "serve as an adequate

3    ground to bar federal habeas review") (quotation omitted). Because even a discretionary rule may

4    be an adequate ground, and both the United States Supreme Court and the Ninth Circuit have held

5    that California's contemporaneous objection rule is an adequate ground, the Court concludes that

6    Petitioner's failure to object to the jury instruction is an adequate and independent state ground for

7    the state appellate court's decision.

8         To overcome procedural default, a petitioner must establish either: (1) cause for the

9    default, and prejudice as a result of the alleged violation of federal law, or (2) that failure to

10   consider the defaulted claims will result in a "fundamental miscarriage of justice." *Coleman*, 501

11   U.S. at 750. In the instant case, Petitioner has done neither. Indeed, neither the Petition nor the

12   Traverse address whether Petitioner could overcome procedural default. Because Petitioner's

13   claim is procedurally barred, the Court must disregard it.

14        Even if this claim were not procedurally barred, this claim presents a state law question

15   which cannot be challenged on federal habeas review. As explained above, *supra* Section III(B), a

16   federal court cannot depart from a state court's determination of the elements of a state offense.

17   *See Hicks*, 485 U.S. at 629 (concluding that a federal court is "not at liberty to depart from the

18   state appellate court's resolution of . . . issues of state law"); *Stanton*, 146 F.3d at 728 (concluding

19   that a state court's determination on the elements of an offense "is not open to challenge on habeas

20   review"). In this claim, Petitioner challenges the state appellate court's conclusion as to the

21   elements of the state offense of attempting to dissuade a witness or victim. Pet'n at m-6. This

22   Court cannot depart from the state appellate court's determination of that state law issue. Thus,

23   Petitioner is not entitled to habeas relief on this claim.

24   **D. Misjoinder of the Offenses Involving J. and the Offense Involving N.**

25        Petitioner contends that the trial court erred in joining the six offenses involving J. with the

26   one offense involving N. because the case concerning J. was far more inflammatory than the case

27   involving N. Pet'n at m-6 to m-7. Petitioner asserts that the misjoinder of the offenses involving J.

28                                                          23

1    and the offense involving N. violated his Fourteenth Amendment right to a fair trial. *Id.*

2        On this claim, the state appellate court concluded that "joinder of the charges did not

3    violate [Petitioner's] right to a fair trial." *Cortez*, 2016 WL 6962539, at *13. Petitioner contends

4    that the state appellate court's ruling that joinder of the charges did not violate Petitioner's right to

5    a fair trial was an unreasonable application of clearly established Supreme Court law as set forth in

6    *United States v. Lane*, 474 U.S. 438 (1986). Pet'n at m-7.

7        However, there is no clearly established United States Supreme Court law on this issue.

8    Petitioner relies upon *Lane*, where the United States Supreme Court stated in a footnote that

9    misjoinder may rise to the level of a constitutional violation "if it results in prejudice so great as to

10   deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n.8. However,

11   the Ninth Circuit has repeatedly held that the *Lane* footnote "is dicta" because "*Lane* dealt with the

12   joinder of standards under Federal Rules of Criminal Procedure 8 and 52" and thus "no

13   constitutional issue was before the Court." *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010)

14   (affirming denial of habeas relief where the petitioner relied on the *Lane* footnote); *accord*

15   *Martinez v. Yates*, 585 F. App'x 460, 461 (9th Cir. 2014) (same). Because the *Lane* footnote is

16   dicta, the *Lane* footnote does not constitute clearly established United States Supreme Court law.

17   *See Collins*, 603 F.3d at 1132 (affirming denial of habeas relief because the *Lane* footnote was not

18   clearly established United States Supreme Court law); *Martinez*, 585 F. App'x at 461 ("[W]e have

19   held that this footnote in *Lane* does not qualify as clearly established federal law under federal

20   habeas law"); *see generally Cullen*, 563 U.S. at 412 (stating that the only definitive source of

21   clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings, not the dicta, of the

22   United States Supreme Court).

23       Because there is no clearly established United States Supreme Court law on this issue, the

24   state court's denial of relief was not contrary to or an unreasonable application of clearly

25   established United States Supreme Court law. *See* 28 U.S.C. § 2254(d)(1) (stating that a habeas

26   petition may not be granted with respect to any claim that was adjudicated on the merits in state

27   court unless the state court's adjudication of the claim "resulted in a decision that was contrary to,

28
Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("[I]t cannot be said that a state court unreasonably applied clearly established Federal law" when United States Supreme Court precedent "give[s] no clear answer to the question presented.") (internal quotation marks and alterations omitted).

Accordingly, the Ninth Circuit has repeatedly held that there is no clearly established United States Supreme Court law on this issue and has thus denied federal habeas relief. *See Collins*, 603 F.3d at 1132 (affirming denial of claim for habeas relief based on misjoinder); *see also Collins v. Uribe*, 564 F. App'x 343 (9th Cir. 2014) (affirming denial of habeas relief where petitioner argued that trial court erred in failing to sever counts because "[t]he Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process"); *Martinez*, 585 F. App'x at 461 (9th Cir. 2014) (affirming denial of habeas relief because "there is no clearly established Supreme Court precedent dictating when a trial in state court must be severed"); *Hollie v. Hedgpeth*, 456 F. App'x 685, 685 (9th Cir. 2011) (affirming denial of habeas relief where petitioner argued that trial court erred in failing to sever counts because "[t]he Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process"). Thus, Petitioner is not entitled to habeas relief on this claim.[1]

### E. Admission of N.'s Out-of-Court Statements

Petitioner contends that the trial court erred in admitting N.'s out-of-court responses to

---

[1] In the Petition, Petitioner also relies on *Bean v. Calderon*, 163 F.3d 1073, 1077 (9th Cir. 1998). In that case, the Ninth Circuit held that the joinder of two indictments deprived the petitioner of a fair trial. *Id.* at 1083. However, that case was distinct from the instant case because the habeas petition in *Bean* was filed before the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted. *See Bean*, 163 F.3d at 1077 ("Because Bean filed his habeas petition before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), the provisions of the AEDPA do not apply to this case."). Thus, unlike Petitioner in the instant case, the petitioner in *Bean* was not required to show that the state court's adjudication of the claim was contrary to or involved an unreasonable application of clearly established United States Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). As stated above, Petitioner in the instant case cannot satisfy the AEDPA standard.

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

police questions because N lacked competence to testify at the time she made those statements due to N.'s age. Pet'n at m-7 to m-19. N. was four years old at the time N. made her out-of-court statements and five years old at the time of trial. *Cortez*, 2016 WL 6962539, at *1. Petitioner asserts that the admission of N.'s out-of-court statements violated Petitioner's Fourteenth Amendment right to due process and Sixth Amendment right to confrontation of the witnesses against him. *Id.* at m-7.

On this claim, the state appellate concluded that admission of N.'s out-of-court statements did not violate Petitioner's constitutional rights. *Cortez*, 2016 WL 6962539, at *9. Below, the Court considers in turn: (1) the Sixth Amendment's Confrontation Clause; and (2) the Fourteenth Amendment's Due Process Clause.

### 1.   The Sixth Amendment's Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). A primary interest secured by the Confrontation Clause is the right of cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315–16 (1974).

The Confrontation Clause applies to all "testimonial" statements. *See Crawford v. Washington*, 541 U.S. 36, 50–51 (2004). "Testimony. . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (citations and quotation marks omitted). The Confrontation Clause applies to testimonial hearsay, which are out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence. *Id.* at 50–51. Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless: (1) the witnesses are unavailable, and (2) the defendants had a prior opportunity to cross-examine the witnesses. *Id.* at 59.

However, the United States Supreme Court has explicitly stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9; *see also California v. Green*, 399 U.S. 149,

26

United States District Court
Northern District of California

158 (1970) ("[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination."). The Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9; *Green*, 399 U.S. at 158 ("[I]f the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections" provided by confrontation).

In the instant case, N. testified at trial and was subject to cross-examination by Petitioner. *See* Ans. Exh. B at 11–22 (cross-examination of N. at trial by Petitioner's counsel). Accordingly, admission of N.'s hearsay statements did not violate the Confrontation Clause. *See Crawford*, 541 U.S. at 59 n.9 (holding that the Confrontation Clause does not bar the admission of testimonial hearsay when the declarant appears at trial and is subject to cross-examination); *Green*, 399 U.S. at 158 (same); *see also Cunningham v. Grounds*, 2013 WL 215283, at *3 (N.D. Cal. May 16, 2013) (denying habeas relief to petitioner who claimed that improper admission of child victim's prior statements violated the Confrontation Clause where child victim testified in court). Because N. testified in person at trial and was subject to cross-examination by Petitioner, the Confrontation Clause does not bar the admission of N.'s out-of-court statements.

### 2.   The Fourteenth Amendment's Due Process Clause

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986) (stating that habeas relief could not be granted based on the erroneous admission of evidence "unless admission of the testimony was arbitrary or fundamentally unfair"). Petitioner's entitlement to habeas relief on this ground does not turn on whether a state evidentiary law has been violated, but whether the admission of the evidence "so infected the entire trial that the resulting conviction violates due process." *McGuire*, 502 U.S. at 72. A failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999) ("Even where it

United States District Court
Northern District of California

1   appears that evidence was erroneously admitted, a federal court will interfere only if it appears that

2   its admission violated fundamental due process and the right to a fair trial.").

3        In the instant case, Petitioner has not demonstrated that admission of N.'s out-of-court

4   statements was fundamentally unfair. N.'s out-of-court statements were consistent with N.'s

5   testimony at trial. *See* Ans. Exh. B. at 357–59 (N.'s testimony at trial that Petitioner touched her).

6   In addition, Officer Perez, who interviewed N.; Maria, who is N.'s mom; and David, who is N.'s

7   dad, corroborated N.'s out-of-court statements in their testimony at trial. *See* Ans. Exh. B at 326–

8   31 (testimony of N.'s dad regarding when N. told her parents that Petitioner touched her); *id.* at

9   387–90 (testimony of N.'s mom regarding when N. told her parents that Petitioner touched her);

10  *id.* at 568 (testimony of Officer Perez regarding touching of N.).

11       Finally, the jury was given California Criminal Jury Instruction 1190, which instructs that a

12  determination of guilt regarding sexual assault crimes does not require the victim's testimony to be

13  corroborated by other evidence, including the victim's out of court statements. *See* Ans. Exh. A at

14  487 (jury instruction stating that "[c]onviction of a sexual assault crime may be based on the

15  testimony of a complaining witness alone"). Thus, Petitioner has failed to show that admission of

16  N.'s out-of-court statements so infected the entire trial that the resulting conviction violates the

17  Due Process Clause. Accordingly, Petitioner is not entitled to habeas relief on this claim.

18  **F.  Failure to Instruct the Jury on Lesser Included Offenses**

19       Petitioner contends that the trial court erred in failing to instruct the jury that: (1) unlawful

20  sexual intercourse with a minor who is more than three years younger than the defendant is a

21  lesser included offense of aggravated sexual assault through rape, and (2) unlawful sexual

22  penetration with a minor who is more than three years younger than the defendant is a lesser

23  included offense of aggravated sexual assault. Pet'n at m-19 to m-20. Petitioner contends that the

24  trial court's failure to instruct the jury on these lesser included offenses violated Petitioner's

25  Fourteenth Amendment right to due process and Sixth Amendment right to a jury trial. *Id.*

26       On this issue, the state appellate court concluded that, "even assuming the court should

27  have instructed the jury on the lesser included offenses, the failure to do so was harmless because

28

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

1    it is not reasonably probable the jury would have found favorably for [Petitioner] on the charged

2    counts." *Cortez*, 2016 WL 6962539, at *17–*19. Petitioner contends that the state appellate court's

3    determination that the error was harmless was an unreasonable application of clearly established

4    United States Supreme Court law as set forth in *Keeble v. United States*, 412 U.S. 205 (1973);

5    *Beck v. Alabama*, 447 U.S. 625 (1980); and *In re Winship*, 397 U.S. 358 (1970). Pet'n at m-19 to

6    m-20.

7        However, *Beck*, *Keeble*, and *Winship* do not apply to the instant circumstances. In *Beck*, the

8    United States Supreme Court held that a defendant may be entitled to lesser included offense

9    instructions in a capital case. 447 U.S. at 638. However, the United States Supreme Court

10    explicitly declined to extend its holding to non-capital cases. *Id.* at 638 n.14. Specifically, the

11    United States Supreme Court stated: "[W]e need not and do decide whether the Due Process

12    Clause would require the giving of [lesser included offense] instructions in a noncapital case." *Id.*

13    at 638 n.14. Similarly, in *Keeble*, the United States Supreme Court declined to recognize a right to

14    lesser included offense instructions in non-capital cases. Specifically, the United States Supreme

15    Court stated: "[W]e have never explicitly held that the Due Process Clause of the Fifth

16    Amendment guarantees the right of a defendant to have the jury instructed on a lesser included

17    offense." 412 U.S. at 213. Additionally, *Winship* held that "the Due Process Clause protects the

18    accused against conviction except upon proof beyond a reasonable doubt of every fact necessary

19    to constitute the crime with which he is charged." 397 U.S. at 363–64. However, *Winship* never

20    mentioned lesser included offense instructions at all. Accordingly, the Court concludes that *Beck*,

21    *Keeble*, and *Winship* did not clearly establish the right of a defendant in a non-capital case to lesser

22    included offense instructions.

23        Because there is no clearly established United States Supreme Court authority that requires

24    lesser included offense instructions, the state appellate court's decision was not contrary to or an

25    unreasonable application of clearly established United States Supreme Court law. *See* 28 U.S.C. §

26    2254(d)(1) (stating that a habeas petition may not be granted with respect to any claim that was

27    adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted

28

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1  in a decision that was contrary to, or involved an unreasonable application of, clearly established

2  Federal law, as determined by the Supreme Court of the United States"); *see also Wright*, 552 U.S.

3  at 126 ("[I]t cannot be said that a state court unreasonably applied clearly established Federal law"

4  when United States Supreme Court precedent "give[s] no clear answer to the question presented.")

5  (internal quotation marks and alterations omitted). Accordingly, Petitioner is not entitled to habeas

6  relief on this claim.

### G. Cumulative Error

8        Finally, Petitioner contends that the cumulative effect of the prejudice from all the errors

9  violated Petitioner's Fourteenth Amendment right to due process and a fair trial. Pet'n at m-21.

10  Respondent contends that the state appellate court reasonably concluded that there were no errors,

11  so there was no prejudice to cumulate. Ans. at 23.

12        In some cases, although no single existing constitutional error is sufficiently prejudicial to

13  warrant reversal, the cumulative effect of several constitutional errors may still prejudice a

14  defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862,

15  893–95 (9th Cir. 2003) (considering whether the cumulative effect of multiple constitutional errors

16  in the defendant's case had a "substantial and injurious effect" on the jury's verdict) (quoting

17  *Coleman*, 525 U.S. at 145). Where there is no single existing constitutional error, however, there is

18  nothing to accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d

19  939, 957 (9th Cir. 2002), *overruled on other grounds as recognized by United States v. Chandler*,

20  658 F. App'x 841 (9th Cir. 2016) ("Because there is no single constitutional error in this case,

21  there is nothing to accumulate to a level of a constitutional violation."). Here, Petitioner has failed

22  to establish any constitutional error. *See* Sections III(A)–(F), *supra*. Accordingly, there are no

23  errors to aggregate. Thus, Petitioner is not entitled to habeas relief on his cumulative error claim.

### IV.    CONCLUSION

25        The petition for a writ of habeas corpus is DENIED.

26        Petitioner has not shown "that jurists of reason would find it debatable whether the petition

27  states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it

Case No. 18-CV-02969-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

1    debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529

2    U.S. 473, 484 (2000). Accordingly, a certificate of appealability is DENIED.

3    **IT IS SO ORDERED.**

4

5    Dated: August 25, 2021

6                                              _____

7                                              LUCY H. KOH
                                               United States District Judge

8

9

United States District Court
Northern District of California